UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

RONALD I. CHORCHES AS TRUSTEE OF
THE CHAPTER 7 BANKRUPTCY ESTATE
OF CHRISTOPHER M. COUGHLIN,
     Plaintiff,

    v.

STEWART TITLE GUARANTY
COMPANY,
     Defendant.

No. 3:13-cv-01182 (JAM)

**RULING GRANTING MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT**

This is a case about property rights in Greenwich, Connecticut. When Christopher Coughlin bought some residential property in Greenwich, neither he nor his title insurer— defendant Stewart Title Guaranty Company—knew that the property was subject to a subterranean utility easement for the benefit of neighboring land. Coughlin has spent the last 17 years litigating this easement in one manner or another. More recently, and apparently as a result of the prolonged litigation, Coughlin has declared bankruptcy. In this latest round of litigation, plaintiff Ronald Chorches—in his capacity as trustee of Coughlin's bankruptcy estate—brings this federal diversity action, alleging that defendant breached its title insurance contract with Coughlin and acted in bad faith by not adequately assisting Coughlin in his legal battles against neighbors.

Defendant now moves to dismiss and also for summary judgment. I conclude that both motions should be granted, principally on the grounds that plaintiff's claims stem from actions outside the scope of the title insurance policy and as to which Coughlin has previously signed a

valid release of liability in defendant's favor.

**Background**

The origins of this case stretch back to October 1996, when Coughlin purchased a piece of property at One Random Road in Greenwich, Connecticut. Defendant issued a title insurance policy to Coughlin, and an attorney performed a title search. The search, however, failed to disclose the existence of an easement for the benefit of properties now known as Two Random Road and Four Random Road; nor did Coughlin know that this easement had in fact been exercised by means of the installation of three subsurface utility conduits. *See Coughlin v. Anderson*, 270 Conn. 487, 490–92 & n.4, 853 A.2d 460, 464-65 & n.4 (2004) (describing details of property purchase and easement).

Coughlin made a demand against defendant under the title policy, and defendant paid Coughlin $15,000 in August 1997. At the time of this payment, Coughlin signed a "Release" in which he agreed, in return for this payment, to release defendant from future liability as follows:

> I, Christopher M. Coughlin of 1 Random Road, in the Town of Greenwich, County of Fairfield and State of Connecticut for the consideration of $15,000 do hereby release and discharge Stewart Title Guaranty Company of Houston, Texas from *any further loss, damage or liability* resulting from *any claim made by any party* to rights reserved in a deed recorded in Volume 771 at Page 442. I specifically release and discharge Stewart Title Guaranty Company from the obligation to defend claims of others to easement rights across my property which rights may be derivative from the rights reserved in the deed recorded in Volume 771 at Page 442 and further specifically release Stewart Title Guaranty Company from *any claim of diminution in value* of may [sic] property at 1 Random Road, in the Town of Greenwich, County of Fairfield and State of Connecticut due to presence of the easement rights referred to herein.

Doc. #22-3 at 2 (emphasis added).

In addition to signing this release, Coughlin also agreed to a Change Endorsement modification of his title policy to provide for the following exception from his title insurance coverage:

> Reservation of Rights for the purposes of laying and maintaining one or more pipes or conduits to carry water, sewerage, gas or electrical energy as contained in a deed recorded in Volume 771 at Page 442 of the Greenwich Land Records.

Doc. #22-4 at 2. Coughlin signed the Change Endorsement document, stating that he "agrees to and accepts this additional exception to title and agrees to its inclusion in the above referenced title insurance policy." *Id.*

Beyond its payment to Coughlin of $15,000, defendant also filed suit on Coughlin's behalf against both the previous owner/seller of One Random Road and the real estate attorney who had performed the errant title search. After several years of litigation, the Connecticut Supreme Court affirmed a trial court's entry of a directed verdict against Coughlin for his failure to prove damages. *See Coughlin v. Anderson*, 270 Conn. 487, 853 A.2d 460 (2004). The Connecticut Supreme Court agreed with the trial court that there was a valid fixed easement or partial encumbrance on Coughlin's property corresponding to the subsurface utility conduits that were already in use for the benefit of Coughlin's neighbors at Two and Four Random Road, but the Connecticut Supreme Court further held that—contrary to Coughlin's claim—his neighbors did not otherwise have a "floating" easement that more broadly impaired his property rights. *Id.* at 505–09. Because Coughlin had claimed damages only on a "floating" easement and did not present proof of damages from the more limited, fixed subsurface conduit easement that his neighbors had actually exercised, the Connecticut Supreme Court ruled that the trial court had properly entered judgment against him. *Id.* at 512.

Yet the Connecticut Supreme Court's decision was far from the end of the matter. Coughlin soon filed another state court suit in 2005, this time against the owners of Two and Four Random Road. Now precluded by the Connecticut Supreme Court's decision from challenging the easement, he claimed that his neighbors' use of the easements to install new

3

utility conduits in 1997 constituted a trespass. Doc. #22-7 at 7–12. The neighbors in turn claimed that the conduits were not installed beyond the geographic scope of the easements as defined by the Connecticut Supreme Court; alternatively, they claimed that Coughlin had consented to their exceeding the scope of their easement. *Id.* at 39. This second suit allegedly went to trial in April 2011, resulting in a finding that Coughlin's claims regarding the easements were estopped by the previous Connecticut Supreme Court ruling. Compl. ¶ 16; *see also* Doc. #22-7 at 77 (jury verdict form finding that Coughlin was "equitably estopped from pursuing a trespass claim against the defendant"). The Connecticut Appellate Court affirmed the decision of the trial court, and the Connecticut Supreme Court allegedly denied Coughlin's petition for certification. Compl. ¶ 21–23. That litigation returned to the Superior Court and, as of the filing of this case, allegedly remains unresolved. *Id.* ¶ 27.

In late April 2011, Coughlin sent defendant a demand letter seeking financial assistance with his suit against the owners of Two and Four Random Road, reimbursement of his legal expenses thus far, relief from the foreclosure of his property, and two million dollars for diminution of property value. Doc. #22-7 at 2–3. Another demand letter followed in November 2012, this time demanding that defendant "initiate an action to clear the title to One Random Road" and reimburse incurred costs. Doc. #22-8 at 3. Defendant declined the demand on the ground that both the Release and Change Endorsement signed by Coughlin absolved it from ongoing responsibility or liability. Doc. #22-9 at 2.

In August 2013, plaintiff filed the instant lawsuit against defendant, principally alleging breach of contract and bad faith denial of insurance coverage.[1] Defendant has now moved to dismiss and also for summary judgment

---

[1] Plaintiff also alleged a claim under the Connecticut Unfair Trade Practices Act, but abandoned this claim in his briefing of the pending motions.

[2] Nor is there any merit to plaintiff's argument that the easements referenced by the Change Endorsement

4

**Discussion**

Because both of defendant's motions rely on documents beyond the complaint and as to which plaintiff has had ample opportunity to respond, I address both motions under the single standard that governs a motion for summary judgment, *see* Fed. R. Civ. P. 12(d), rather than conducting separate inquiries and exploring which of the extrinsic documents, if any, may be considered in connection with a motion to dismiss. *See, e.g.*, *Hernandez v. Coffey*, 582 F.3d 303, 309 (2d Cir. 2009). The principles governing a motion for summary judgment are well established. Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014). "A genuine dispute of material fact 'exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor.'" *Zann Kwan v. Andalex Grp., LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (quoting *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007)). The evidence adduced at the summary judgment stage must be viewed in the light most favorable to the non-moving party and with all ambiguities and reasonable inferences drawn against the moving party. *See, e.g.*, *Tolan*, 134 S. Ct. at 1866; *Caronia v. Phillip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013). All in all, "a 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan*, 134 S. Ct. at 1866 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

Plaintiff's breach of contract claim plainly lacks merit for multiple reasons. First, the Change Endorsement discontinued any continuing obligation of defendant with respect to the easement claims at issue in this case. If a rider or endorsement to an insurance policy clearly and

unambiguously indicates an exclusion from coverage, an insurer has no contractual obligation to provide that coverage. *See Liberty Mut. Ins. Co. v. Lone Star Indus., Inc.*, 290 Conn. 767, 807, 967 A.2d 1, 28 (2009) (noting that "if the court concludes that the exclusion via endorsement is clear and unambiguous, then the insurer will have carried its burden of proving an exclusion to a risk otherwise generally insured against") (internal quotations omitted); *Nat'l Grange Mut. Ins. Co. v. Santaniello*, 290 Conn. 81, 96, 961 A.2d 387, 397 (2009) (insurance company had no duty to defend or indemnify when policy endorsement "clearly and unambiguously effected a change to the underlying policy by deleting the floating dealer plate coverage in its entirety"); *see also Cont'l Ins. Co. v. Atl. Cas. Ins. Co.*, 603 F.3d 169, 181 (2d Cir. 2010) (applying New York law; because endorsement to insurance policy "effectively precludes coverage for 'any operations involving . . . any torch' as well as for 'any operations involving . . . membrane roofing,' and the 'operations' that started [a] fire involved both a torch and membrane roofing, losses arising out of the fire were not within [the insured's] liability coverage"). Here, given the immediate context for defendant's Change Endorsement as it arose from discovery of the utility easement, there can be no doubt that Coughlin understood its purpose and effect to exclude coverage for future claims stemming from the very easement at issue in this case.

Even if the Change Endorsement were not dispositive, the Release plainly forecloses plaintiff's breach of contract claim. "In construing the scope and effect of a release, the intent manifested by the parties must govern," and those intentions "may be determined by looking at the specific language of the release and circumstances surrounding its execution." *Remington Prods., Inc. v. N. Am. Philips Corp.*, 717 F. Supp. 36, 41–42 (D. Conn. 1989). Here, the Release—signed by Coughlin at the time that he accepted $15,000 from defendant as consideration—broadly and unambiguously provided that Coughlin would "release and

discharge Stewart Title Guaranty Company . . . from *any further loss, damage or liability* resulting from *any claim made by any party* to rights reserved in a deed recorded in Volume 771 at Page 442," and would "specifically release and discharge Stewart Title Guaranty Company from the obligation to defend claims of others to easement rights across my property . . . and further specifically release Stewart Title Guaranty Company from any claim of diminution in value . . . due to presence of the easement rights." Doc. #22-3 at 2 (emphasis added).

Coughlin claims that "I did not understand that Release to apply to <u>all</u> matters involving rights for an easement in favor of neighboring properties for the purposes of laying or maintaining utility pipes or conduits over One Random Road." Doc. #34-1 at 2. But this ignores the very broad language of the release quoted above. As the Connecticut Supreme Court has explained, "any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms." *Nat'l Grange*, 290 Conn. at 89 (quoting *Zulick v. Patrons Mut. Ins. Co.*, 287 Conn. 367, 373, 949 A.2d 1084, 1088 (2008)).

Nor does the fact that Coughlin chose not to avail himself of the advice of counsel before deciding to sign the release create a genuine fact issue that the Release was ambiguous, much less that he did not or could not understand its clear and broad terms. Advice of counsel is hardly a prerequisite for a layperson to enter a binding contract. *See Lexington Ins. Co. v. Lexington Healthcare Grp., Inc.*, 311 Conn. 29, 70, 84 A.3d 1167, 1191 (2014) ("In determining whether policy language is ambiguous, we read the policy from the perspective of a *reasonable layperson* in the position of the purchaser of the policy.") (internal quotations omitted) (emphasis added); *see also* Restatement (Second) of Contracts § 12(2) ("A natural person who manifests assent to a transaction has full legal capacity to incur contractual duties thereby unless he is (a) under guardianship, or (b) an infant, or (c) mentally ill or defective, or (d) intoxicated.").

Moreover, even assuming that neither the Change Endorsement nor Release were dispositive, plaintiff's claim would still fail, because the claims at issue in Coughlin's suit against his neighbors for which he demanded defendant's recompense and assistance are outside the base coverage scope of the title insurance policy. Coughlin sued his neighbors for trespass, and the neighbors claimed that he had consented to any extent to which they had exceeded the scope of their easement. Neither his claim nor the neighbors' defense called into question the validity or scope of Coughlin's property title rights (and understandably so, as the validity of the neighbors' easement had already been settled by the Connecticut Supreme Court in *Coughlin v. Anderson*, *supra*).

Plaintiff nonetheless claims there is a question of fact as to whether the text of the Release and Change Endorsement—which except from coverage easement rights "contained" in the deed (Endorsement), "reserved" in the deed (Release), or "derivative" of rights reserved in the deed (Release)—covers disputes over rights plaintiff claims are not guaranteed by the deed. But there is no evidence that the claimed rights of the neighbors at Two and Four Random Road to install utility conduits are based on any other easement rights than those guaranteed by the deed. If any conduits exist outside the geographic location of the easement, this is an issue of trespass and is not covered by the title policy.[2]

In addition, to the extent that plaintiff claims that defendant should have brought or bankrolled Coughlin's trespass suit against his neighbors, this claim ignores that the title policy does not oblige defendant to bring suit on Coughlin's behalf, much less to compensate him years after the fact for costs of litigation that he unilaterally chose to pursue. Apart from defendant's obligation under the policy to *defend* against third-party claims that are adverse to an insured's

---

[2] Nor is there any merit to plaintiff's argument that the easements referenced by the Change Endorsement and Release pertain only to Four Random Road and not to Two Random Road. *See Coughlin v. Anderson*, 270 Conn. at 515 n.4 (rejecting same argument).

title, the policy otherwise vests discretion in defendant whether to institute *affirmative* litigation:

> (a) Upon written request by the insured and subject to the options contained [elsewhere in the Title Policy], the Company . . . shall provide for the *defense* of an insured in litigation in which any third party asserts a claim adverse to the title or interest as insured, but only as to those stated causes of action alleging a defect, lien or encumbrance or other matter insured against by this policy. . . . The Company will not pay any fees, costs or expenses incurred by the insured in the defense of those causes of action which allege matters not insured against by this policy.
>
> (b) The Company shall have the *right . . . to institute and prosecute any action or proceeding* or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest, as insured, or to prevent or reduce loss or damage to the insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable hereunder, and shall not hereby concede liability or waive any provision of this policy. . . .

Doc. #22-2 at 3 (emphasis added). Again, plaintiff has failed to show a breach of the title insurance contract.

Because plaintiff's contract claim fails, so too does his claim of bad faith denial of coverage. As the Connecticut Supreme Court has recently concluded, "a bad faith action must allege denial of the receipt of an express benefit under the [insurance] policy." *Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*, 308 Conn. 760, 794, 67 A.3d 961, 986 (2013). And the underlying covenant of good faith and fair dealing in a contractual relationship "is not implicated by conduct that does not impair contractual rights." *Id.* at 795 (no bad faith claim against insurer for failure to investigate an insurance claim where the policy provided the insurer sole discretion as to whether to investigate); *see also Renaissance Mgmt. Co. v. Conn. Hous. Fin. Auth.*, 281 Conn. 227, 240–41, 915 A.2d 290, 297-98 (2007) (defendant housing authority's refusal to help tenants by accepting mortgage prepayments did not violate the covenant of good faith and fair dealing because the agency was not contractually obligated to accept prepayments). Here, because plaintiff has failed to show that Coughlin did not receive any benefits to which he was

entitled under the title policy, his bad faith claim fails by equal measure.[3]

## Conclusion

For the reasons set forth above, defendant's Motion to Dismiss [Doc. #19] and Motion for Summary Judgment [Doc. #20] are GRANTED. The complaint is dismissed with prejudice, and judgment shall enter in favor of defendant on all the claims in the complaint.

The Clerk shall close this case.

It is so ordered.

Dated at Bridgeport this 10th day of September 2014.

/s/_____
Jeffrey Alker Meyer
United States District Judge

---

[3] Because I conclude that plaintiff's contract and bad-faith claims fail on their merits, I need not consider defendant's statute-of-limitations defense.